16-4029-cv
*Marks v. Hochhauser*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2016

(Argued:    June 15, 2017                    Decided:    November 29, 2017)

Docket No. 16-4029-cv

ROSS EDWARD MARKS, acting on behalf of infant children, SM, AM, and BM,

*Petitioner-Appellant,*

v.

KAREN HOCHHAUSER,

*Respondent-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Before:

WINTER, CALABRESI, and CHIN, *Circuit Judges.*

Appeal from a judgment of the United States District Court for the

Southern District of New York (Karas, *J.*), dismissing a petition pursuant to the

Hague Convention on the Civil Aspects of International Child Abduction

seeking the return of three children from New York to Thailand. The district court held that the petition fails to state a claim for wrongful retention because (1) retention for these purposes is a singular and not a continuing act, and (2) the retention here occurred before the treaty became operable as to the United States and Thailand.

AFFIRMED.

---

KIERSTEN M. SCHRAMEK (Jessica H. Ressler, *on the brief*), Ressler & Associates, White Plains, New York, *for Petitioner-Appellant*.

ROBERT D. ARENSTEIN, Law Offices of Robert D. Arenstein, New York, New York (Richard Min, Camhi & Min LLC, New York, New York, *on the brief*), *for Respondent-Appellee Karen Hochhauser*.

---

CHIN, *Circuit Judge*:

In this case, petitioner-appellant Ross Edward Marks seeks relief under the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention"), Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89, as implemented by the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001 *et seq.*, for the allegedly wrongful retention in the United States of

2

the parties' minor children, S.M., A.M., and B.M. (the "Children"), by their mother, respondent-appellee Karen Hochhauser. Hochhauser and the Children resided in Thailand, but while they were in New York in 2015 on what was supposed to be a three-week trip, Hochhauser advised Marks that she and the Children would not be returning to Thailand.

Marks brought this action below under the Convention for the return of the Children. The district court dismissed his petition, holding that (1) retention for these purposes is a singular and not a continuing act, and (2) the retention here occurred before the treaty became operable as to the United States and Thailand. Marks appeals. We affirm.

## *BACKGROUND*

The parties are American citizens who met in Asia and were married in China in 1999. They were living in Hong Kong when their three sons were born, one in 2002 and twins in 2005. In July 2005, the parties and the Children relocated to Bangkok, Thailand.

In August 2015, Marks and Hochhauser were divorced, in Thailand, and the divorce judgment granted Hochhauser sole custody of the Children. In

3

December 2015, the Thai Court of Appeals accepted Marks's appeal of the lower court's grant of sole custody to Hochhauser.

On September 18, 2015, Hochhauser and the Children traveled to the United States to visit Hochhauser's ill mother. Before their departure, Hochhauser represented to Marks and the Thai court that she and the Children would stay in New York for three weeks and then return to Thailand on October 10, 2015; indeed, she represented that she had booked their return flights. On October 7, 2015, however, Hochhauser sent Marks an email as follows:

> I have made the decision to remain in the United States with the boys. It is clear to me now that there is no workable solution for us to live in Thailand. This decision was based upon trying to build a future for both myself and them, not out of any anger toward you about the past or any desire to exclude you from their lives. The boys need you to continue to be an important part of their lives and I will do as much as I can to facilitate that. Hopefully we can find a way to build a working relationship for their benefit.

App. 81. On January 25, 2016, the Thai Court of Appeals vacated the trial court's judgment in part and held that Marks and Hochhauser "shall exercise joint custody of all of their three minor children." App. 63.

Marks filed this petition for the return of the Children to Thailand on September 9, 2016, within one year of the date Hochhauser advised Marks that she and the Children would not be returning to Thailand. Hochhauser

4

moved to dismiss the petition, arguing, *inter alia*, that any wrongful retention of the Children took place prior to the Convention's entry into force between the United States and Thailand.

On November 2, 2016, after hearing oral argument, the district court granted the motion to dismiss the petition, ruling from the bench. The district court first concluded that "retention" is a singular and not a continuing act and that the singular act here occurred on October 7, 2015, when Hochhauser sent her email to Marks advising that she and the Children were not returning to Thailand. The district court further concluded that the Convention did not enter into force between the United States and Thailand until April 2016, after the United States accepted Thailand's accession to the Convention.[1] The district court thus held that the retention occurred before the Convention entered into force between the two countries. The district court entered judgment on November 7, 2016, granting the motion to dismiss the petition.

This appeal followed.

---

[1] The district court concluded that the United States did not accept Thailand's accession until April 2016. In fact, as discussed below, the United States accepted Thailand's accession on January 26, 2016; April 1, 2016 is the first day of the third calendar month after the acceptance. *See* Convention, art. 38.

*DISCUSSION*

We review the district court's interpretation of the Convention *de novo* and its factual findings for clear error. *Souratgar v. Lee*, 720 F.3d 96, 103 (2d Cir. 2013); *Blondin v. Dubois*, 238 F.3d 153, 158 (2d Cir. 2001). The district court's application of the Convention to the facts is subject to *de novo* review. *Gitter v. Gitter*, 396 F.3d 124, 129 (2d Cir. 2005).

## I. *The Convention*

### A. *Overview*

The Convention, a multilateral treaty, governs the wrongful removal and retention of children from their country of habitual residence. *See* Convention, art. 1(a); 22 U.S.C. § 9001(a)(4). It was adopted in 1980 "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." Convention, preamble; *see Souratgar*, 720 F.3d at 101-02. Article 1 explains that:

> The objects of the present Convention are --
>
> a) to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

6

    b) to ensure that the rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

Convention, art. 1.

A parent seeking the return of a child under the Convention must prove, by a preponderance of the evidence, that: "(1) the child was habitually resident in one State and has been removed to or retained in a different State; (2) the removal or retention was in breach of the petitioner's custody rights under the law of the State of habitual residence; and (3) the petitioner was exercising those rights at the time of the removal or retention." *Gitter*, 396 F.3d at 130-31 (citing 22 U.S.C. § 11603(e)(1)(A)). The Convention ceases to apply "when the child attains the age of 16 years." Convention, art. 4; *see Gitter*, 396 F.3d at 132 n.7.

The Convention permits a parent whose child is "habitually resident" in a contracting State and has been "wrongfully removed to or retained in" a different contracting State to commence proceedings for the return of the child. Convention, arts. 1, 3; *Gitter*, 396 F.3d at 130. A removal or retention is "wrongful" where "it is in breach of rights of custody attributed to a person . . . , either jointly or alone, under the law of the State in which the child was

7

habitually resident immediately before the removal or retention," and the custody rights were "actually exercised, either jointly or alone," or would have been but for the removal or retention. Convention, art. 3. Proceedings for the return of the child must be brought within one year "from the date of the wrongful removal or retention." Convention, art. 12.

B. *Entry into Force of the Convention*

Article 35 of the Convention provides that it "shall apply as between Contracting States only to wrongful removals or retentions occurring after its entry into force in those States." Convention, art. 35. Hence, if the removal or retention occurs before the Convention has entered into force between two States, the Convention does not apply.

The Convention does not define "Contracting State," but Articles 37 and 38 provide two separate procedures for countries to accept the Convention. Under Article 37 , "[t]he Convention shall be open for signature by the States which were Members of the Hague Conference of Private International Law [the 'CPIL'] at the time of its Fourteenth Session." Convention, art. 37. Once a State signs, the Convention must be "ratified, accepted or approved and the

instruments of ratification, acceptance or approval" must be deposited with the Ministry of Foreign Affairs in the Netherlands.  Convention, art. 37.

Article 38 provides a second acceptance procedure for states that were not members of the CPIL at the time of its fourteenth session.  In lieu of ratification, these states may "accede" to the Convention.[2]  Article 38 explains that:

> Any other State may accede to the Convention. . . . The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. . . . The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the first day of the third calendar month after the deposit of the declaration of acceptance.

Convention, art. 38.  As Article 38 makes clear, accession requires the acceptance of other states before the Convention "will enter into force," *i.e.*, the accession has effect only as to Contracting States that "have declared their acceptance of the accession." *Id.*

---

[2]    A country's consent to be bound by an international agreement can take different forms, including "accession" to the treaty's provisions after the treaty has entered into force. *See Avero Belg. Ins. v. American Airlines, Inc.*, 423 F.3d 73, 79 n. 7 (2d Cir. 2005).  "'Accession' is 'the act whereby a State accepts the offer or the opportunity of becoming a party to a treaty already signed by some other States." *Id* at 79 fn.7. (quoting Lord McNair, *The Law of Treaties* 149 (1961)).  "'Accession may occur before or after the treaty has entered into force.'" *Avero Belg.*, 423 F.3d at 79 (quoting Ian Brownlie, *Principles of Public Int'l Law* 583 (6th ed. 2003)).

At the time the Convention was opened for signature, the United States was a member of the CPIL and Thailand was not. *See Convention of 25 October 1980 on the Civil Aspects of Child Abduction: Status Table*, Hague Convention on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/?cid=24 (last updated August 2, 2017) ("Contracting State Status Table").

The United States signed the Convention in 1981 and ratified it, thereby becoming a Contracting State, in 1988, and the Convention entered into force in the United States on July 1, 1988. *See* Contracting State Status Table; *Souratgar*, 720 F.3d at 102 n.5. Thailand acceded to the Convention, pursuant to Article 38, on August 14, 2002, and it entered into force in Thailand on November 1, 2002. *Id.* The United States accepted Thailand's accession to the Convention on January 26, 2016. *See Acceptances of Accessions: Thailand*, Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/acceptances/?mid=670 (last visited Sept. 26, 2017) ("Acceptances of Accessions Table"). The first day of the third calendar month after the United States accepted Thailand's accession was April 1, 2016. *See id.*; Convention, art. 38.

## II.    *Application*

Two principal issues are presented.  First, Marks argues that the district court erred in concluding that retention is a singular event and fixing a particular date of the allegedly wrongful retention because the term "retention" itself implies ongoing activity.  Second, Marks argues that the Convention entered into force between the United States and Thailand in 2002, when Thailand acceded to the Convention, rather than April 1, 2016, after the United States accepted Thailand's accession.  If Marks is correct as to the first issue, we would not need to reach the second issue as the "retention" would then have continued past April 1, 2016.[3]

### A.    *Retention*

The first question is whether "retention" for these purposes is a singular or a continuing act.  We agree with the district court that "retention" is a singular and not a continuing act.

"'The interpretation of a treaty, like the interpretation of a statute, begins with its text.'"  *Abbott*, 560 U.S. at 10 (quoting *Medellin v. Texas*, 552 U.S. 491, 506 (2008)); *accord Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 186 F.3d 210,

---

[3]    We assume, without deciding, that Marks has established a *prima facie* case of wrongful retention.  *See Abbott v. Abbott*, 560 U.S. 1, 20 (2010).

11

215 (2d Cir. 1999) ("Treaties are construed in much the same manner as statutes."), *abrogated on other grounds by American Intern. Group, Inc. v. Bank of Am. Corp.*, 712 F.3d 775 (2d Cir. 2013). The text of a treaty is to be interpreted "in accordance with the ordinary meaning to be given to the terms of the treaty in their context and in the light of its object and purpose." Vienna Convention on the Law of Treaties, art. 31.1 *opened for signature* May 23, 1969, 1155 U.N.T.S. 331; *see generally Bank of N.Y. v. Yugoimport*, 745 F.3d 599, 612 (2d Cir. 2014). We also consider the opinions of foreign tribunals, for, in interpreting international conventions and treaties, "the opinions of our sister signatories [are] entitled to considerable weight." *Air Fr. v. Saks*, 470 U.S. 392, 404 (1985); *accord Abbott*, 560 U.S. at 16 ("Congress has directed that 'uniform international interpretation of the Convention' is part of the Convention's framework." (quoting 22 U.S.C. § 9001(b)(3)(B))). The Supreme Court has also noted, in the context of the Convention, that the views of the Executive Branch are entitled to "great weight." *Abbott*, 560 U.S. at 15. Finally, in interpreting the Convention in particular, our cases have also relied on the report of Elisa Pérez-Vera, "the official Hague Conference reporter for the Convention." Dep't of State, Hague Int'l Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. at 10,503 (1986)

12

("State Dep't Legal Analysis"); *see, e.g., Gitter*, 396 F.3d at 129 & n.4; *Blondin*, 189 F.3d at 246 & n.5.

The Convention specifies when the "removal or retention of a child is to be considered wrongful," Convention, art. 3, but it does not define the term "retention." Hence, we look to the ordinary meaning of "retention." The word, however, has more than one ordinary meaning. "Retention" means "the act of retaining or state of being retained." *Retention*, Webster's Third New Int'l Dictionary (1961) ("Webster's"). "Retain" can mean "restrain" or "prevent" or "to hold or continue to hold in possession or use." *Retain*, Webster's. Hence, looking just at the plain meaning of the word, "retention" can be a singular act or, as Marks argues, an ongoing, continuous act.

Notwithstanding this ambiguity, there are a number of considerations that demonstrate that "retention" is a singular act for the purpose of the Convention -- "wrongful retention" occurs when one parent, having taken the child to a different Contracting State with permission of the other parent, fails to return the child to the first Contracting State when required. *See generally Taveras v. Morales*, 22 F. Supp. 3d 219, 231-32 (S.D.N.Y. 2014).

Other provisions of the Convention suggest that retention is a singular act. Article 35 provides that the Convention "shall apply as between Contracting States only to wrongful removals or retentions occurring *after* its entry into force in those States." Convention, art. 35 (emphasis added). Article 12 provides that proceedings for the return of a child must be brought within one year "from the date of the wrongful removal or retention." Convention, art. 12. These provisions contemplate a singular act, and the provisions would make little sense if "retention" were a continuous, ongoing state. A retention that began before the Convention's entry into force would still be actionable as long as the child was not returned before the Convention entered into force. Similarly, under Marks's interpretation, the one-year time limitation would have no effect, for the "retention" would continue as long as the child was not returned to the first Contracting state. The structure and context of the Convention suggest that "retention" is a single act -- one that must occur after the Convention takes force and less than a year before the commencement of proceedings.

Foreign courts that have interpreted Article 35 have concluded that retention is a single act. In the consolidated cases of *In re H.* and *In re S.* [1991] 2 AC 476, the House of Lords held that "both removal and retention are events

14

occurring on a specific occasion," explaining that Article 12 expressly contemplates wrongful removals and retentions as specific occasions. 2 AC at 488, 499; *see also Kilgour v. Kilgour*, [1987] SC 55 (Scot.) ("[O]ne is in my view given a very firm indication indeed that the retention in question is an initial act of retention . . . and that the Convention is not primarily concerned . . . with the new state of affairs which will follow on such initial acts and which might also be described as retention."). Although the colloquial meaning of retention could suggest a continuous state of affairs, no court has endorsed this perspective. Lynda R. Herring, *Taking Away the Pawns: International Parental Abduction & the Hague Convention*, 20 N.C. J. Int'l L. & Com. Reg. 137, 162 (1994) ("Some contention has been raised as to the issue of retroactivity, as some applicants have argued that a wrongful retention is a 'continuing offense' such that an order for return could still be granted once the Convention became effective between Contracting States. The case law on this point makes it explicit that such a contention will not prevail.").

The State Department, in its "Legal Analysis" of the Convention, has explained the distinction between "removal" and "retention" as follows:

> Generally speaking, "wrongful removal" refers to the taking of a
> child from the person who was actually exercising custody of the

15

child.  "Wrongful retention" refers to the act of keeping the child without the consent of the person who was actually exercising custody.  The archetype of this conduct is the refusal by the noncustodial parent to return a child at the end of an authorized visitation period.

State Dep't Legal Analysis., 51 Fed. Reg. at 10503.  This language suggests that "retention" is a singular act -- such as the failure of Hochhauser to return the Children to Thailand at the end of the authorized visit to the United States.

Finally, the observations of the official reporter of the Convention also suggest that retention is a singular act:

> The fixing of the decisive date in cases of wrongful retention should be understood as that on which the child ought to have been returned to its custodians or on which the holder of the right of custody refused to agree to an extension of the child's stay in a place other than that of its habitual residence.

Elisa Pérez-Vera, *Explanatory Report: Hague Conference on Private International Law,* in 3 Acts and Documents of the Fourteenth Session =426, 458, ¶ 108 (1982).

Accordingly, we conclude that the Convention contemplates that "retention" occurs on a fixed date.  Here, that date was October 7, 2015, when Hochhauser advised Marks that she would not be returning with the Children to Thailand.  We therefore agree with the district court's conclusion that any wrongful retention occurred on October 7, 2015.  We now turn to the question of

16

when the Convention became binding between the United States and Thailand, as the Convention applies only to wrongful retentions occurring after the Convention's "entry into force in those States." Convention, art. 35.

**B.** *Applicability of the Convention*

As noted above, the key dates are as follows: The United States signed the Convention in 1981 and it came into force in the United States in 1988. Thailand was not an original signatory and did not accede to the Convention until 2002, when the Convention entered into force in Thailand. The United States did not accept Thailand's accession to the Convention until January 26, 2016. *See* Acceptances of Accessions Table.

Marks argues that the Convention entered into force between the United States and Thailand in 2002 when Thailand acceded to the Convention, even though the United States did not formally accept Thailand's accession until 2016. We disagree.

Marks's argument is belied by the plain wording of the Convention. Article 38 provides that an accession "will have effect only" as to relations between an acceding State and Contracting States that "declared their acceptance of the accession." Convention, art. 38. Article 38 further provides that "[t]he

17

Convention will *enter into force* as between the acceding State and the State that has declared its acceptance of the accession *on the first day of the third calendar month after the deposit of the declaration of acceptance*." Convention, art. 38 (emphasis added). Hence, the Convention enters into force as between an acceding State and a Contracting State that accepts the accession "on the first day of the third calendar month after" the acceptance. As the CPIL's website on the Convention reports, the United States accepted Thailand's accession on January 26, 2016, and the Convention entered into force as between the two countries on April 1, 2016. *See* Acceptances of Accessions Table ; *accord Souratgar*, 720 F.3d at 102 n.5 ("Under Article 38, one state's accession will have effect with respect to another contracting state only after such other state has declared its acceptance of the accession . . . . Singapore's accession was accepted by the United States on February 9, 2012 and entered into force on May 1, about three weeks before [the wrongful removal].") (citations omitted).

The State Department has reached the same conclusion: "Article 35 limits application of the Convention to wrongful removals or retentions occurring after its entry into force *between* the two relevant Contracting States." State Dep't Legal Analysis, 51 Fed. Reg. at 10509 (emphasis added). The State

18

Department also notes that "under Article 38 the Convention . . . enters into force only between [acceding] States and member Contracting States which specifically accept their accession to the Convention." *Id.* at 10514. Clearly, the Convention did not come into force between Thailand and the United States until after the latter accepted the former's accession.

This interpretation conforms to the academic consensus on the issue. *See, e.g.,* Carol S. Bruch, *The Central Authority's Role Under the Hague Child Abduction Convention: A Friend in Deed,* 28 Family L.Q. 35, 36 n.2 (1994) ("An accession is effective only between the acceding country and those contracting states that have accepted the accession."); Lynda R. Herring, *Taking Away the Pawns: International Parental Abduction & the Hague Convention,* 20 N.C. J. Int'l L. & Com. Reg. 137, 138 n. 8 (1994) ("Accession…binds a country only as to those other nations that declare their acceptance of the particular accession under Article 38.") (citations omitted); Olga Khazova, *Russia's Accession to the Hague Convention on Civil Aspects of International Child Abduction 1980: New Challenges for Family Law and Practice,* 48 Fam. L.Q. 253, 253 (2014) ("The accession takes effect only in regards to the relations between the acceding State and those Contracting States that have declared their acceptance of the accession.").

Marks relies heavily on a decision of the United States District Court

for the Northern District of Illinois holding that "Article 35 requires only that the

wrongful removal or retention at issue occur after the Convention enters into

force individually in the acceding State and in the State to which the child was

removed to or is retained." *Viteri v. Pflucker*, 550 F. Supp. 2d 829, 839 (N.D. Ill.

2008). We decline to adopt the reasoning of the *Viteri* court. Not only is its

conclusion inconsistent with the plain wording of the Convention, the *Viteri*

court expressly stated that it lacked the benefit of the State Department's

interpretation of Article 35. *See id.* at 837 (noting that "the parties [did not] offer

any executive interpretation of this portion of the Convention to which this court

would defer.").

Marks also points out that the State Department has noted that

"countries *may* agree to apply the Convention retroactively to wrongful removal

and retention cases arising prior to its entry into force for those countries." State

Dep't Legal Analysis 51 Fed. Reg. at 10514 (emphasis added). He suggests that

we adopt this "liberal interpretation of Article 35" contemplated by the State

Department. Pet.-Appellant Br. at 22. As he acknowledges, however, the State

Department has not endorsed this reading of Article 35. *See* State Dep't Analysis, 51 Fed. Reg. at 10,514. Nor is there any indication that Thailand has.

Accordingly, we conclude that the Convention does not "enter into force" until a ratifying state accepts an acceding state's accession and that Article 35 limits the Convention's application to removals and retentions taking place after the Convention has entered into force between the two states involved. Thus, because the Convention did not enter into force between the United States and Thailand until April 1, 2016, after the allegedly wrongful retention of the Children in New York on October 7, 2015, the Convention does not apply to Marks's claim and the district court did not err in dismissing his petition.

## *CONCLUSION*

For the reasons set forth above, we **AFFIRM** the judgment of the district court.