19-1417
*Eidem v. Eidem*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of December, two thousand nineteen.

PRESENT:

> DENNIS JACOBS,
> SUSAN L. CARNEY,
> MICHAEL H. PARK,
> > *Circuit Judges.*

---

PER MAGNE EIDEM,

> *Petitioner-Appellee,*

> > v.                                                             No. 19-1417

DANA MARIE EIDEM,

> *Respondent-Appellant.*

---

| | |
|---|---|
| FOR PETITIONER-APPELLEE: | ARI H. GOURVITZ, (Elliot H. Gourvitz, *on the brief*), Gourvitz & Gourvitz, LLC, Springfield, NJ. |
| FOR RESPONDENT-APPELLANT: | CHARLES D. COLE, JR., Newman Myers Kreines Gross Harris, P.C., New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Sullivan, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on April 29, 2019, is **AFFIRMED**.

Respondent-Appellant Dana Marie Eidem ("Dana Marie") appeals from a judgment of the United States District Court for the Southern District of New York (Sullivan, *J.*), granting the application of Petitioner-Appellee Per Magne Eidem ("Per Magne") for an order directing the return of his two sons to Norway. Per Magne makes this request under the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, (the "Hague Convention" or "Convention"); *see* 22 U.S.C. §§ 9001 *et seq.* (domestic implementing legislation). The children currently reside with Dana Marie, their mother, in New York.

Dana Marie does not appeal the District Court's ruling that Norway is the "habitual residence" of the children under applicable case law from this Circuit. *See Gitter v. Gitter*, 396 F.3d 124, 130-31 (2d Cir. 2005). Rather, she appeals only the District Court's ruling with respect to her "grave risk" defense, which prevents signatory States from ordering the return of a child when "his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention, art. 13(b) ("grave risk" defense). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm the District Court's ruling.

The parties do not contest the basic underlying facts. In 2008, Dana Marie and Per Magne, then married, had their first child, T.E., in Norway. Shortly after T.E.'s birth, he was diagnosed with Hirschsprung's disease, a condition in which nerves in parts of the intestine are missing. As a result of his disease, when very young, T.E. underwent a "pull-through" surgery at a hospital in Trondheim to remove part of his colon. In 2010, the parties had their

second child, N.E., who has struggled academically from a very young age. Both children require psychological care.

In June 2013, Dana Marie sought legal separation from Per Magne in Norway courts. The parties agreed to share custody of the children. Three years later, during the summer of 2016, Per Magne consented to Dana Marie traveling with the children to the United States for a one-year period, and Dana Marie and the children came to New York City. In January 2017, Per Magne began making arrangements with Dana Marie for the children's eventual return to Norway. Dana Marie informed Per Magne that she would return with the children to Norway on August 8, 2017. On that day, Per Magne went to meet them at the airport where they were expected, but they did not appear. Still in New York City, Dana Marie proceeded to cut off all communication with Per Magne. On July 6, 2018, Per Magne petitioned in the United States District Court for the Southern District of New York for the children's return.

On April 29, 2019, after an evidentiary hearing, the District Court granted Per Magne's petition and ordered that the children be returned to Norway by June 29, 2019. The District Court determined that Per Magne had established a prima facie case for return, and that Norway was the children's habitual residence. It rejected Dana Marie's "grave risk" defense, concluding that she did not sustain her burden of proof and that she lacked credibility.[1] The District Court found further that Dana Marie failed to establish that medical care in Norway "is so lacking" as to pose a grave risk to T.E.'s health or that the children would be deprived of adequate psychological care upon their return to Norway. *Eidem v. Eidem*, 382 F. Supp. 3d 285, 293-94 (S.D.N.Y. 2019).

---

[1] The District Court declined to credit Dana Marie's testimony in light of her admission to making a false statement to the court: Dana Marie admitted that she testified falsely when she insisted to the court that she brought the children to a hearing because the babysitter cancelled the engagement, but in fact, she had never talked with a babysitter about watching the children while she was in court. *See Eidem*, 382 F. Supp. at 288-89. This court gives "strong deference where the district court premises its findings on credibility determinations." *Mathie v. Fries*, 121 F.3d 808, 812 (2d Cir. 1997) (citation omitted); *see also Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985) ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.").

"We review the district court's interpretation of the Convention *de novo* and its factual findings for clear error." *Marks v. Hochhauser*, 876 F.3d 416, 418 (2d Cir. 2017). We also review *de novo* "[t]he District Court's *application* of the Convention to the facts," including its determination of whether a grave risk of harm has been shown. *See Blondin v. Dubois*, 238 F.3d 153, 158 (2d Cir. 2001) ("*Blondin II*") (emphasis in original).

Because of the strong presumption that children should be returned to the place of their "habitual residence," we interpret the grave risk defense narrowly. *Blondin v. Dubois*, 189 F.3d 240, 245-46 (2d Cir. 1999) ("*Blondin I*"). As we have observed elsewhere, an overly permissive acceptance of the affirmative defense "would lead to the collapse of the whole structure of the Convention by depriving it of the spirit of mutual confidence which is its inspiration." *Id.* at 246 (citation omitted). The respondent bears the burden of establishing the applicability of the "grave risk" defense by clear and convincing evidence. *See* 22 U.S.C. § 9003(e)(2)(A).

On appeal, Dana Marie argues that (1) the District Court incorrectly relied on post-hearing submissions offered by Per Magne and medical experts to determine that the children would not be at grave risk if returned to Norway; and (2) the record, absent the post-hearing submissions, clearly establishes that an order directing the children's return to Norway would place them at grave risk. She maintains that, in Norway, the children would have limited access to medical treatment and emergency services (for T.E.), and psychological supports for both children, each of whom has unique mental health and learning needs.

Setting aside the post-hearing submissions, we conclude that the record, as it existed after the October 8, 2018 hearing, establishes that the children would not be at grave risk if returned to Norway. Dana Marie failed to establish by clear and convincing evidence that in Norway the children would receive inadequate medical and psychological care. Neither Dana Marie nor the medical experts she relied upon took the position that in Norway, T.E. would not have any treatment or care for his disease. In fact, one of Dana Marie's experts noted that there are "renowned and experienced pediatric surgeon[s]" in Norway, such as T.E. might require. J.A. at 559-60. Rather, Dana Marie's position seems to be that in Norway, the

4

medical care available would be less than optimal, especially as compared to his treatment in the United States. But, as the District Court noted, less than optimal medical care does not equate to grave risk and is not the standard set for permitting a parent to remove a child from his habitual residence. *Eidem*, 382 F. Supp. 3d at 293 ("[T]he narrow question before the Court is not whether [the doctors in New York] are best suited to manage T.E.'s condition, but whether access to medical care in Norway is so lacking as to pose a grave risk to T.E.'s health."). In *Blondin II*, we ruled that the "grave risk" defense does not apply to "those situations where repatriation might [merely] cause inconvenience or hardship." 238 F.3d at 162. We agree with the District Court, therefore, that Dana Marie did not establish by clear and convincing evidence that T.E. would receive inadequate medical care in Norway and would thus be subject to "grave risk."

As to the children's psychological care, the District Court reasonably credited the conclusion of Dr. Rahtz, a psychiatric evaluator who testified on Dana Marie's behalf. Dr. Rahtz raised concerns about disrupting the children's current support and care network in New York. But the District Court put the calculus appropriately: While disrupting the children's current mental health treatment may not be desirable,

> the children had to undergo a similar disruption when [Dana Marie] first pulled them out of their mental health treatment programs in Norway and took them to the United States. Indeed, there is reason to believe that a return to Norway— where the children lived for the first eight and six years of their lives, and where the vast majority of their family resides—would be less traumatic than the original trip to the United States.

*Eidem*, 382 F. Supp. 3d at 294.

We therefore conclude that the record demonstrates that Dana Marie did not carry her burden of establishing her grave risk defense by clear and convincing evidence. Having done so, we need not decide whether the District Court was correct to refer to post-hearing submissions in its decision and order.

\* \* \*

5

We have considered Dana Marie's remaining arguments and conclude that they are without merit. Accordingly, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court