19-3740-cv
Valles Rubio v. Veintimilla Castro

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 11th day of May, two thousand twenty.

Present:     JOHN M. WALKER, JR.,
             ROSEMARY S. POOLER,
             GERARD E. LYNCH,
                      *Circuit Judges*.

---

SEGUNDO MELCHOR VALLES RUBIO,

                    *Petitioner-Appellee*,

           v.                                              19-3740

OLGA KATERINE VEINTIMILLA CASTRO,

                    *Respondent-Appellant*.

---

For Respondent-Appellant:    Yoav M. Griver (Bryan D. Leinbach, *on the brief*), Zeichner Ellman & Krause LLP, New York, N.Y.

For Petitioner-Appellee:     Saurabh Sharad (Robert H. Pees, *on the brief*), Akin Gump Strauss Hauer & Feld LLP, New York, N.Y.

Appeal from the United States District Court for the Eastern District of New York (Matsumoto, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of said District Court be and it hereby is **AFFIRMED**.

1

Respondent-Appellant Olga Katerine Veintimilla Castro ("Castro") appeals from the October 15, 2019 memorandum decision and order of the U.S. District Court for the Eastern District of New York (Matsumoto, *J.*) granting the petition of Petitioner-Appellee Segundo Melchor Valles Rubio ("Valles") for the repatriation of his and Castro's son, B.V., to Ecuador, pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention" or "the Convention"), Oct. 25, 1980, T.I.A.S. No. 11670, *reprinted in* 51 Fed. Reg. 10,494 (Mar. 26, 1986), as implemented by the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001-9011. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

"We review the district court's interpretation of the Convention *de novo* and its factual determinations for clear error." *Souratgar v. Lee*, 720 F.3d 96, 103 (2d Cir. 2013). "Our review under the clearly erroneous standard is significantly deferential," and "[w]e must accept the trial court's findings unless we have a definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks and citations omitted). "The district court's application of the Convention to the facts is subject to *de novo* review." *Marks ex rel. SM v. Hochhauser*, 876 F.3d 416, 418 (2d Cir. 2017).

Under ICARA, if a petitioner for repatriation establishes wrongful removal of the child, then the child must "be promptly returned unless one of the narrow exceptions set forth in the Convention applies." 22 U.S.C. § 9001(a)(4). As is relevant here, a respondent can contest repatriation by establishing by clear and convincing evidence, 22 U.S.C. § 9003(e)(2)(A), that "there is a grave risk" that repatriation of the child "would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation," Hague Convention, art. 13(b). Even if the repatriation poses a grave risk of harm, however, "the district court is not necessarily bound to allow the child to remain with the abducting parent." *Blondin v. Dubois*, 189 F.3d 240, 246 n.4 (2d Cir. 1999). Rather, a "federal district court retains, and should use when appropriate, the discretion to return a child, despite the existence of a defense, if return would further the aims of the Convention." *Id.* (internal quotation marks and citation omitted). Accordingly, we have explained that "[i]n cases of serious abuse, before a court may deny repatriation on the ground that a grave risk of harm exists under Article 13(b), it must examine the full range of options that might make possible the safe return of a child to the home country." *Blondin v. Dubois*, 238 F.3d 153, 163 n.11 (2d Cir. 2001); *see also Saada v. Golan*, 930 F.3d 533, 539 (2d Cir. 2019) (explaining that the district court must "take into account any ameliorative measures (by the parents and by the authorities of the state having jurisdiction over the question of custody) that can reduce whatever risk might otherwise be associated with a child's repatriation" (internal quotation marks and citation omitted)).

The district court concluded that, though evidence of Valles's physical and psychological abuse of B.V. established that B.V. faced a grave risk of harm if returned to Valles's custody, ameliorative measures such as litigation in Ecuadorian courts were sufficient to protect B.V., and it therefore granted Valles's petition for B.V.'s return. Castro contends on appeal that this was error, primarily arguing that the district court (1) erroneously placed the burden of proving the unavailability of ameliorative measures on Castro; (2) insufficiently developed the record to support its conclusion as to the existence of enforceable ameliorative measures; and (3)

2

disregarded that Castro would not return to Ecuador if B.V. were repatriated. In response, Valles argues that Castro failed to satisfy her burden to show a grave risk of harm, that ameliorative measures were sufficient to protect B.V. from any risk of harm, and that this Court should take judicial notice of the joint status update ("JSU") the parties filed with the district court setting out the parties' agreed-upon ameliorative measures.

As a preliminary matter, we grant Valles's motion to take judicial notice of the JSU pursuant to Federal Rule of Evidence 201, under which we may judicially notice an "adjudicative fact" that "is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." It is beyond dispute that the JSU is a public document, filed with the district court pursuant to the district court's order that the parties meet and confer regarding B.V.'s repatriation. Further, because the parties' arguments focus in large part on the measures available to protect B.V. upon repatriation, the JSU is clearly relevant to our determination, on appeal, as to whether ameliorative measures sufficiently mitigate the risk of harm to B.V. Accordingly, the Court GRANTS Valles's motion to take judicial notice of the JSU.

We do not agree with Valles that Castro failed to meet her burden to show a grave risk of harm to B.V., however. The district court found clear and convincing evidence of physical and emotional abuse, including, inter alia, four beatings with a belt, one beating with a stick, frequent verbal abuse, using B.V. as cover to transport firearms in Valles's car, and handing B.V. a loaded firearm while making threatening comments. On this record, we agree that Castro adequately demonstrated that B.V. could face a grave risk of harm if repatriated. *See Souratgar*, 720 F.3d at 103 ("Under Article 13(b), a grave risk of harm from repatriation arises . . . in cases of serious abuse or neglect, . . . when the court in the country of habitual residence, for whatever reason, may be incapable or unwilling to give the child adequate protection." (internal quotation marks, italics, and citation omitted)).

Nevertheless, in light of the protective measures set out in the JSU and the record of Castro's successful litigation in Ecuadorian courts, we cannot conclude that the district court abused its discretion in ordering B.V.'s repatriation. The JSU provides for weekly visits between B.V. and Castro's family, daily conversations by video or telephone between Castro and B.V., and restrictions on B.V.'s access to firearms, including prohibitions on the presence of any firearms where B.V. resides. Castro has failed to establish on appeal that these measures are inadequate to protect B.V., nor has she shown why she cannot avail herself of the Ecuadorian courts or the equitable power of the district court to enforce ameliorative measures for the protection of B.V.

Castro's arguments to the contrary are unavailing. First, the district court did not err in failing to hold explicitly that Valles had the burden to show the availability of ameliorative measures, because the district court concluded that ameliorative measures were available based on the existing factual record. Over the course of a three-day hearing, the district court heard testimony about and received submissions from the parties' litigation in Ecuadorian courts, including the adjudication of child support, child abuse allegations against Castro, and Castro's multiple successful requests for permission from Ecuadorian courts to take B.V. for trips outside of Ecuador. We therefore conclude that the district court sufficiently developed the record as to

3

the ability of the Ecuadorian courts to enforce adequate ameliorative measures to support its order of repatriation.

We agree with Castro, however, that the district court too quickly discounted her argument that she would not return to Ecuador with B.V., and that the efficacy of any protective measures would need to be assessed in light of her absence. *See Valles Rubio v. Veintimilla Castro*, No. 19-CV-2524, 2019 WL 5189011, at \*31, (E.D.N.Y. Oct. 15, 2019) (reasoning that "where an ameliorative measure would include court-ordered custodial arrangements to protect the child, a respondent should not be rewarded for declining to ameliorate the risk by refusing to return with a child to the habitual residence, and thus risk losing custody"). This Court has instructed that "[i]n cases of serious abuse, before a court may deny repatriation on the ground that a grave risk of harm exists under Article 13(b) [of the Hague Convention], it must examine the full range of options that might make possible the safe return of a child to the home country." *Blondin*, 238 F.3d at 163 n.11. Such ameliorative conditions "balanc[e] our commitment to ensuring that children are not exposed to a grave risk of harm with our general obligation under the Hague Convention to allow courts in the country of habitual residence to address the merits of custody disputes." *Saada*, 930 F.3d at 541. Thus, where repatriation would return a child to the sole physical custody of their abuser, a district court does not properly weigh the safety of the child if it fails to examine the full range of ameliorative measures, including those that are enforceable when the respondent parent has chosen not to return. *See, e.g.*, *Blondin*, 189 F.3d at 249 (finding "merit in the District Court's reasons for avoiding a remedy that would effectively transfer the children directly into" the abusive parent's custody, and accordingly instructing the district court to exercise its "broad equitable discretion" on remand to consider a range of potential ameliorative measures).

Here, however, the district court did not simply order repatriation without any ameliorative measures. Rather, the district court ordered the parties to negotiate the terms of the repatriation, and report back to the court on the terms on which they had agreed. In response to that order, the parties filed the JSU, providing ameliorative measures for B.V.'s repatriation to Valles's custody in Ecuador. As discussed, Castro has failed to show that these measures or the protection of the Ecuadorian courts are inadequate, even if she remains in the United States; nor did she petition the district court to amend the terms of the JSU. Accordingly, even if the district court failed to specifically examine the enforceability of ameliorative measures in light of Castro's decision not to return to Ecuador, we cannot conclude that the ameliorative measures currently in place are insufficient to mitigate the risk of harm to B.V., such that B.V.'s repatriation was an abuse of discretion.

Castro argues on appeal that Valles has not fully complied with the terms of the JSU since B.V.'s return to Ecuador. In the absence of any effort by Castro to make a record on this subject by petitioning either the Ecuadorian courts or the district court for relief in light of these alleged derelictions, we decline to consider such allegations in the first instance.

4

We have considered the remainder of Castro's arguments and find them to be without merit. Accordingly, the order of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk