*In re* REQUEST FOR INVESTIGATIVE SUBPOENA

Docket No. 236829. Submitted March 5, 2003, at Lansing. Decided March 25, 2003, at 9:10 A.M.

The Ingham County Prosecuting Attorney petitioned the Ingham Circuit Court for authorization to issue a subpoena to further the investigation of the murder of Bernita White. The court, Lawrence M. Glazer, J., authorized a subpoena, which was directed to Charles Rettstadt, a private investigator who had been hired by Artis White, the husband of Bernita White, to investigate her for purposes of a divorce proceeding that was pending at the time of the murder. The court thereafter entered an order quashing the subpoena after Artis White invoked the investigator-client privilege, MCL 338.840(2). The court then considered the prosecution's motion for reconsideration and entered an order rescinding the order quashing the subpoena and directing that the materials sought in the subpoena be delivered to the court for an in-camera review, after which only documents, records, or tangible objects that contain or depict factual information and that do not constitute, contain, or include communications between Rettstadt or his employer and Artis White or his attorneys would be released to the prosecutor. Artis White appealed.

The Court of Appeals *held*:

The court committed error requiring reversal in failing to quash the subpoena.

The statutory privilege protects communications furnished by a client to a licensed private investigator and information secured in connection with an assignment for the client. The privilege precluded the court from ordering the private investigator to turn over information obtained during the course of his investigation and in accordance with the assignment for which he was retained. There is no statutory exception that permits the court to set aside the privilege where the prosecutor shows a need for the information.

Reversed.

PROSECUTING ATTORNEYS — INVESTIGATIVE SUBPOENAS — INVESTIGATOR-CLIENT PRIVILEGE.

The statutory investigator-client privilege encompasses both the communication between the private investigator and his client and any

information obtained in connection with or in furtherance of the assignment for the client; there is no statutory exception that permits the court to set aside the privilege upon a prosecutor's showing of a need for such information (MCL 338.840[2]).

*Stuart J. Dunnings III*, Prosecuting Attorney, and *Guy L. Sweet*, Assistant Prosecuting Attorney and Appeals Unit Chief, for the Ingham County Prosecuting Attorney.

*Clark, Chip & Barger, L.L.P.* (by *David M. Clark* and *Thomas S. Barger*), for Artis White.

Before: DONOFRIO, P.J., and SAAD and OWENS, JJ.

DONOFRIO, P.J. Petitioner Ingham County Prosecuting Attorney sought an investigative subpoena to further the investigation of the murder of Bernita White, respondent's spouse. Respondent Artis White appeals as of right from an order authorizing the issuance of an investigative subpoena by the petitioner on a private investigator hired by respondent to investigate the decedent in a divorce proceeding pending at the time of her death. We reverse.

FACTS AND PROCEDURAL HISTORY

During a pending divorce proceeding, respondent, a Michigan State Police detective, hired a private investigator, Charles Rettstadt, to investigate his then-wife, Bernita White. The Whites and their daughter were walking together in Potter Park Zoo shortly before Bernita White's murder in the zoo. As part of the ongoing investigation into Bernita White's murder, the Ingham County Prosecutor sought an investigative subpoena pursuant to MCL 767A.2(1) for the files of

Rettstadt. The trial court authorized the investigative subpoena that provided Rettstadt was to

> produce documents pertaining to the retention of the agency by Artis White, including but not limited to, all contracts and/or retention agreements; all journals, notes or interviews produced pursuant to the agreements; all photographs, video tapes, digital images or audio tapes produced pursuant to the agreements; all records pertaining to billings for services rendered pursuant to the agreement; any check, draft, instrument, credit or promise to pay received pursuant to the agreement.

Shortly thereafter, Artis White moved to quash the investigative subpoena and invoked his statutory privilege pursuant to MCL 338.840(2). The prosecutor claimed that the divorce-investigation files that included surveillance materials could assist in the homicide investigation, and then argued that the facts and information assembled by Rettstadt during his investigation should be divided analytically into two categories, (1) the "raw" information itself and (2) the analysis of the information including inferences, theorizing, and conclusions drawn. The prosecutor maintained that the information developed during the course of Rettstadt's investigation could be valuable to the prosecutor's investigation of White's homicide and that the information could be "lost" if not disclosed to the prosecutor. The prosecutor contended that the subpoena did not violate the investigator-client privilege because the subpoena did not seek to obtain any direct communications between respondent and his investigator. Given the importance of investigating a homicide and the absence of any alternative means of obtaining the information possessed

by the investigator, the prosecutor argued it was necessary to abrogate the privilege.

The circuit court granted respondent's motion to quash and reasoned that while a common-law or statutory privilege could be narrowed when it was balanced against a *criminal defendant's* constitutional rights, the same balancing is inappropriate when a prosecutor seeks to narrow or abrogate the privilege. The court further observed that the court rules relating to discovery applied to nonprivileged material only. Specifically, the court concluded:

> So the jurisprudence of the state, as I understand it, is that the courts will balance the constitutional right of a criminal defendant and that defendant's need for material in order to exercise his constitutional rights against what otherwise would be iron clad privileges. But no exception to those privileges exists in the jurisprudence of the state for a prosecutor doing an investigation of this type, and so for all of those reasons the motion is granted.

Relying upon *Tezak v Huntington Research Assoc, Ltd*, unpublished opinion per curiam of the Court of Appeals, issued May 15, 2001 (Docket No. 215490), the prosecutor moved for reconsideration of the order granting the motion to quash. In *Tezak*, the plaintiffs asserted a separate cause of action alleging intentional wrongdoing by the defendant private investigator arising from his investigation of the plaintiffs in a prior personal-injury lawsuit filed by the plaintiffs. The plaintiffs served on the defendant interrogatories, requests for production of documents, and requests to admit regarding the investigative work he had performed in connection with that prior action. The defendant moved for a protective order, contending that the discovery sought by the plaintiffs was

prohibited by MCL 338.840, but the trial court denied the protective order and granted the plaintiffs' motion to compel. This Court held that the trial court abused its discretion in completely denying the defendant's request for a protective order. Observing that the court rule governing discovery provided for the disclosure of *unprivileged* material only, this Court concluded that "the trial court should have determined which discovery requests were covered by the private detective-client privilege and exempted these from discovery." *Tezak, supra.*

Relying on *Tezak,* the prosecutor requested the court to (1) rescind its order quashing the subpoena, (2) conduct an in-camera review of all the subpoenaed materials, and (3) release to the prosecutor "all factual information that does not constitute, contain or include communications from or with Artis White or [his attorneys.]" The circuit court granted the motion to reconsider, and the order provided, in relevant part:

> [T]his Court being convinced that the detective/client privilege in MCL 338.840(2) covers communications between the investigator and client, but does not encompass facts the investigator uncovers during his or her employment by the client; and this Court being further convinced that its August 6, 2001 order is based on a clear and palpable error,
>
> IT IS HEREBY ORDERED that the August 6, 2001 Order Quashing Subpoena is rescinded.
>
> IT IS FURTHER ORDERED that a representative of Clark, Chip & Barger, L.L.P. shall immediately deliver to this Court all documents, records and tangible objects listed in the investigative subpoena that was served on Charles Rettstadt and Research North.
>
> IT IS FURTHER ORDERED that this Court shall review the above-described materials *in camera,* and shall release to

the Ingham County Prosecuting Attorney *only* documents, records or tangible objects that contain or depict factual information *and* that do not constitute, contain or include communications between Charles Rettstadt or Research North and Artis White or Clark, Chip & Barger, L.L.P.

This appeal followed.

### ANALYSIS

On appeal, respondent argues that the trial court committed error requiring reversal in failing to quash the investigative subpoena issued by the prosecutor to Rettstadt. We agree. Because this issue presents a legal question of statutory interpretation, we review the trial court's ruling de novo. *In re Investigation of March 1999 Riots in East Lansing*, 463 Mich 378, 383; 617 NW2d 310 (2000).

A prosecuting attorney is permitted by MCL 767A.2(1) to petition the district or circuit court for authorization to issue subpoenas to investigate the commission of a felony. MCL 767A.6(5) provides, in relevant part:

> The court *shall not* compel the person to answer a question or produce any record, document, or physical evidence *if* answering that question or producing that record, document, or physical evidence *would violate a statutory privilege* or a constitutional right. [Emphasis added.]

The investigator-client privilege, MCL 338.840, provides:

> (1) Any person who is or has been an employee of a licensee shall not divulge to anyone other than his employer or former employer, or as the employer shall direct, except as he may be required by law, any information acquired by him during his employment in respect to any of the work to

which he shall have been assigned by the employer. Any employee violating the provisions of this section and any employee who wilfully makes a false report to his employer in respect to any work is guilty of a misdemeanor.

(2) Any principal, manager or employee of a licensee who wilfully furnishes false information to clients, or who wilfully sells, divulges or otherwise discloses to other than clients, except as he may be required by law, any information acquired by him or them during employment by the client is guilty of a misdemeanor, and shall be subjected to immediate suspension of license by the secretary of state and revocation of license upon satisfactory proof of the offense to the secretary of state. *Any communications, oral or written, furnished by a professional man or client to a licensee, or any information secured in connection with an assignment for a client, shall be deemed privileged with the same authority and dignity as are other privileged communications recognized by the courts of this state.* [Emphasis added.]

The rules of statutory interpretation delimit our role in the analysis of the quoted legislation. Our Supreme Court explained the court's role with regard to statutory interpretation in *Massey v Mandell*, 462 Mich 375, 379-380; 614 NW2d 70 (2000):

In examining a statute, it is our obligation to discern the legislative intent that may reasonably be inferred from the words expressed in the statute. *White v Ann Arbor*, 406 Mich 554, 562; 281 NW2d 283 (1979). One fundamental principle of statutory construction is that "a clear and unambiguous statute leaves no room for judicial construction or interpretation." *Coleman v Gurwin*, 443 Mich 59, 65; 503 NW2d 435 (1993). Thus, when the Legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself and there is no need for judicial construction; the proper role of a court is to apply the terms of the statute to the circumstances in a particular case. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995). Concomitantly, it is our task to give the words used by the

Legislature their common, ordinary meaning. MCL 8.3a; MSA 2.212(1).

We note initially that the parties agree that the relevant statutes are unambiguous and should be enforced as written. Both parties also agree that the statutory privilege is two-fold: it protects first, "communications . . . furnished by . . . [the] client to the licensee," and second, "information secured in connection with an assignment for a client . . . ." MCL 338.840(2). While the prosecutor agrees that the privilege prohibits disclosure of communications made by the client (or the client's attorney) to the investigator, he makes three arguments regarding why he is entitled to the information captured by the second prong of the privilege.

The prosecutor argues: (1) the statutory language should be read narrowly, otherwise the investigator-client privilege becomes the broadest of all privileges; (2) an exception to nondisclosure should be made on a showing of need or the privilege against disclosure should be abrogated when the information advances a homicide investigation; and (3) our Court's ruling in *Tezak* supports the prosecutor's interpretation of the privilege. While the prosecutor's arguments are immediately drawn to the concerns of solving the instant homicide, we must conclude that they are unpersuasive.

"The creation of the . . . privilege[] . . . establishes the Legislature's assumption that any forced disclosure of the information protected will cause injury to the privilege holder." *People v Stanaway*, 446 Mich 643, 678; 521 NW2d 557 (1994). In *Ravary v Reed*, 163 Mich App 447, 451-452; 415 NW2d 240 (1987), this Court concluded that MCL 338.840(2) "reflects the

Legislature's determination that broad protection is to be accorded the private detective-client relationship. Any communication by a client to a licensee and any information secured in connection with an assignment for a client is privileged."

Clearly, MCL 338.840(1) and MCL 338.840(2) penalize the unauthorized disclosure of *any* information "acquired" by the investigator "during his employment" regarding "any of the work to which he shall have been assigned . . . ." Accordingly, the investigator is forbidden from disclosing information to anyone but his employer, except as his employer may direct or as authorized by law. In our view, this provision would forbid the investigator from disclosing communications, facts, evidence, or other types of information that the investigator obtained during the course of his employment, even if he did not develop that information himself, but merely learned of it by overhearing discussions or reviewing documents. However, the described prohibition applies to only information obtained "in respect to any of the work to which [the investigator] shall have been assigned . . . ." MCL 338.840(1).

In contrast to the penalty provision of the initial sentence of MCL 338.840(2), we read the second sentence to establish a legal prohibition that allows a client to prevent disclosure. The operative sentence announcing the privilege states that it applies to "[a]ny communications, oral or written, furnished by a . . . client to a licensee" and also to "*any information secured in connection with an assignment for a client* . . . ." The first part of the privilege applies to communications from the client to the investigator. This is similar to the statutory attorney-client privi-

lege, MCL 767.5a(2), that applies to "[a]ny communications between attorneys and their clients . . . when those communications were necessary to enable the attorneys . . . to serve as such . . . ."

The use of the phrase "any information" is plain enough: the privilege applies to *all* information without regard to the nature of the information (i.e., verbal, written, documentary, photographic, and so forth). The meaning of the word "secured" is also plain. The relevant definition provided by *Random House Webster's College Dictionary* (2d ed, 2000) is: "to get hold of; obtain." However, the privilege does not pertain to *any* evidence obtained during the course of the investigator's employment; it is restricted to evidence obtained "in connection with an assignment for a client . . . ." Thus, we find the nondisclosure privilege applies to only evidence that is related to the particular assignment on which the investigator is employed.

We also note that the prosecutor's argument is largely premised on the contention that the use of the word "acquired" in the first subsection and in the first sentence of the second subsection compels a different meaning than the use of the word "secured" in the second sentence of the second subsection. However, *Random House Webster's College Dictionary* (2d ed, 2000) defines "secure" to mean obtain and defines "obtain" to mean "to come into possession of; get, *acquire*, or procure, as through effort or request." (Emphasis added.)

Because we find that the express statutory language admits of no other conclusion, we hold that the investigator-client privilege encompasses both the communication between the investigator and his cli-

ent and any information obtained in connection with or in furtherance of the assignment by the client. Arguments concerning the breadth of the privilege are better directed to the Legislature in urging legislative modification of the otherwise clear intent of the Legislature.

The prosecutor also argues that the privilege may nonetheless be abrogated or narrowed on a showing of need to advance a homicide investigation. This argument is based primarily on our Supreme Court's decision in *Stanaway, supra*. In *Stanaway*, the Court considered, in the context of the defendant's request for counseling and juvenile records in a criminal trial, the extent of the statutory privileges provided to psychologists, sexual-assault counselors, social workers, and juvenile-diversion officers. The Court first concluded that the respective privileges applied and that the defendant's need for the records did not come within any of the statutory exceptions. The Court therefore held that the records were exempt from the defendant's request by virtue of the statutory privileges. *Stanaway, supra* at 661-662.

However, because the request was made by a defendant in a criminal case, the Court also considered whether the defendant's right to constitutional due process superseded the statutory privileges. *Id.* at 662. The Court concluded that "[c]ommon-law and statutory privileges may have to be narrowed or yielded if those privileges interfere *with certain constitutional rights of defendants*." *Id.* at 668-669 (emphasis added). Our Supreme Court held that

> in an appropriate case there should be available the option of an in camera inspection by the trial judge of the privileged record on a showing that the defendant has a good-

faith belief, grounded on some demonstrable fact, that there is a reasonable probability that the records are likely to contain material information necessary to the defense. [*Id.* at 677.]

The Court emphasized that the test it had fashioned "anticipates that the privilege holder would be better off if the privilege remains intact." *Id.* at 678. The Court concluded by stating that "[t]he state's interest in preserving the confidentiality of the social worker, diversion, and rape-counseling records must yield to a criminal defendant's due process right to a fair trial when the defendant can show that those records are likely to contain information necessary to his defense." *Id.* at 679-680.

To obtain an investigative subpoena, it is only necessary for the prosecutor to show that the testimony of a person, or examination of the records, documents, or physical evidence requested, "is relevant to the investigation . . . ." MCL 767A.2(2)(d) and MCL 767A.3(1)(c). This standard falls far short of the standard enunciated for overcoming the statutory privilege by the Court in *Stanaway*. Moreover, the constitutional due-process right to a fair trial asserted by the defendant is greater than the right asserted by the prosecutor.

In our view, these considerations render the *Stanaway* decision inapplicable to this appeal. The issue in this appeal does not concern a criminal defendant's due process right to a fair trial. Instead, it concerns a prosecutor's right to obtain statutorily privileged information during the course of a criminal investigation. Our review of the record reveals that the prosecutor has failed to provide us with any authority holding that the prosecutor's right to con-

duct a far-reaching investigation into possible criminal conduct equates to a defendant's constitutional right to a fair trial. Ordinarily, this Court will not consider arguments for which a party has failed to provide authority. *Mudge v Macomb Co*, 458 Mich 87, 104-105; 580 NW2d 845 (1998), quoting *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Although a homicide investigation is critically important, the statute does not permit exceptions based on the potential value of the material to the prosecutor. Indeed, the Legislature protected this information by granting a broad privilege, presumably because the information may have value, not because the information is trivial. Because the procedure established in *Stanaway* resulted from a concern that is not present in this appeal, a criminal defendant's assertion of his constitutional right to a fair trial, we reject the prosecutor's attempt to apply that decision to the facts of the instant case and thereby abrogate the legislatively created privilege.

We are of the opinion that the basis for the prosecutor's motion for reconsideration was this Court's unpublished decision in *Tezak, supra*. Moreover, from the language of the order granting reconsideration, it clearly formed the basis for the trial court's decision.

Unlike the trial court's interpretation, we find the facts of *Tezak* distinguishable from the instant case, and therefore find that the circuit court's reliance on *Tezak* was misplaced. The trial court in *Tezak* was concerned with the alleged wrongdoing of the detective agency outside the scope of its assignment to the client. The agency sought to assert the client's privilege to defeat the plaintiffs' discovery request. In our view, the *Tezak* Court was attempting to provide a

mechanism by which the Court could segregate "privileged," e.g., "information secured in connection with an assignment for a client," from "non-privileged material," information secured outside the scope of an assignment for a client. MCL 338.840. *Tezak* does not support petitioner's argument or the trial court's ruling allowing disclosure of otherwise privileged information.

CONCLUSION

The plain language of the statutory privilege, MCL 338.840(2), precluded the trial court from ordering respondent's private investigator to turn over information obtained during the course of his investigation and in accordance with the assignment for which he was retained. There is no statutory exception that permits the trial court to set aside the privilege on the prosecutor's showing of need. Accordingly, the trial court committed error requiring reversal in authorizing the issuance of an investigative subpoena directing respondent's investigator to provide all information obtained during his investigation for an in-camera review and possible disclosure to the prosecutor.

In light of our resolution of this issue we decline to review respondent's alternative argument for reversal regarding the work-product privilege. MCR 2.302(B)(3)(a).

Reversed. We do not retain jurisdiction.

OWENS, J., concurred.

SAAD, J., I concur in the result only.