*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ZAID SAFDAR,

        Plaintiff-Appellee,

v

DONYA AZIZ,

        Defendant-Appellant.

FOR PUBLICATION
March 7, 2019
9:05 a.m.

No. 344030
Oakland Circuit Court
LC No. 2016-839363-DM

Before: MURRAY, C.J., and SHAPIRO and RIORDAN, JJ.

MURRAY, C.J.

This is defendant's appeal of the trial court's order denying her motion for change of domicile to Pakistan for the minor child, IBAS, born during her marriage to plaintiff. Under state law, MCL 722.27a(10), a trial court cannot enter a parenting time order allowing for the exercise of parenting time in a country that is not a "party" to the Hague Convention on the Civil Aspects of International Child Abduction (Convention). Because the United States has not accepted Pakistan's accession to the Convention, Pakistan is not a "party" to the Convention for purposes of MCL 722.27a(10). Consequently, we affirm the trial court's order denying the motion for change of domicile, but for reasons different than those utilized by the trial court.

## I. BACKGROUND FACTS AND PROCEEDINGS

The parties are once again before this Court on an issue primarily pertaining to their minor child. Relevant to the current appeal is this Court's decision in *Safdar v Aziz*, 321 Mich App 219, 221-222; 909 NW2d 831 (2017), aff'd in part and vacated in part 501 Mich 213 (2018), which addressed the parties' history:

> Plaintiff and defendant, both Pakistani citizens, were married in Pakistan on June 24, 2011, and relocated to the United States, where plaintiff resided with an employment visa. In 2015, defendant moved to Michigan to live with her aunt, while plaintiff continued to reside in Maryland. The couple's only daughter was born in Oakland County on January 1, 2016, and the parties divorced on December 21, 2016. Pursuant to the judgment of divorce, the parties agreed to share joint legal custody of the minor child, while defendant would maintain sole

physical custody. The divorce judgment contained a provision prohibiting the exercise of parenting time in any country that is not a party to the Hague Convention on the Civil Aspects of International Child Abduction. At that time, the prohibition applied to Pakistan. Challenging only the trial court's denial of her motion for attorney fees, defendant filed a claim of appeal from the divorce judgment. . . .

In March 2017, defendant filed the motion to change domicile that is the subject of this appeal, expressing her desire to relocate with the minor child to Pakistan as soon as possible and claiming that Pakistan had completed steps to become a party to the Hague Convention since entry of the judgment of divorce. Plaintiff objected, arguing that the trial court lacked authority to set aside or amend the judgment of divorce while defendant's appeal from that judgment was pending before this Court. Defendant responded that her first appeal was limited to the issue of attorney fees and that the appeal did not preclude the trial court's consideration of custody matters. The trial court adopted plaintiff's position and entered an order dismissing defendant's motion for change of domicile without prejudice, reasoning that pursuant to MCR 7.208(A), it lacked jurisdiction to modify any component of the judgment of divorce.

This Court reversed the trial court on the basis that "[t]he trial court erred when it determined that it lacked the authority to consider defendant's motion for change of domicile and to modify the parties' divorce judgment during the pendency of defendant's appeal." *Id*. at 227. Plaintiff appealed this decision and, in lieu of granting leave to appeal, the Michigan Supreme Court held that "MCL 722.27(1) authorizes the continuing jurisdiction of a circuit court to modify or amend its previous judgments or orders and is an exception to MCR 7.208(A) 'otherwise provided by law.' " *Safdar v Aziz*, 501 Mich 213, 219; 912 NW2d 511 (2018). The Supreme Court vacated this Court's "decision to the extent it derived jurisdiction from MCL 552.17, affirm[ed] the result reached," and remanded the matter to the trial court for further proceedings. *Id*.

On September 27, 2017, which was shortly after the issuance of this Court's opinion but before the Supreme Court's ruling, defendant filed a new motion for change of domicile seeking to relocate the minor child with her to Pakistan. Defendant asserted that Pakistan was now a party to the Convention, eliminating any restriction imposed by MCL 722.27a(10).[1] Further, she argued that the move would greatly improve the quality of life for her and the minor child because a secure home, an excellent international school system, and free health care would be

---

[1] MCL 722.27a(10) provides:

Except as provided in this subsection, a parenting time order shall contain a prohibition on exercising parenting time in a country that is not a party to the Hague Convention on the Civil Aspects of International Child Abduction. This subsection does not apply if both parents provide the court with written consent to allow a parent to exercise parenting time in a country that is not a party to the Hague Convention on the Civil Aspects of International Child Abduction.

available, her immediate and extended family would be nearby, and she would have greater job opportunities and a more affordable cost of living. Defendant emphasized her full and complete compliance with the trial court's previous orders, plaintiff's monthly visits with the minor child, and her willingness to expand or accommodate a more beneficial parenting time schedule to assure plaintiff's maintenance of a bond with the minor child. She also denied having any improper motivation for the relocation. Plaintiff filed an answer to the motion for change of domicile, asserting Pakistan's accession to the Convention has not made it a treaty partner with the United States or a "party" in accordance with MCL 722.27a(10).[2]

At a subsequent motion hearing, the trial court discussed with the parties Pakistan's status with respect to the Convention, ultimately indicating that the United States' failure to recognize Pakistan as a treaty partner constituted "a concern" and "a big issue." Nonetheless, the trial court indicated that an evidentiary hearing was required to resolve the motion to change domicile:

> Well because the Court of Appeals says I had to I'm scheduling the hearing. I don't – I think you've got a up – uphill battle because I'm – I guess I will do more research but I have to be completely satisfied – I have that . . . with respect to their participation, even if I decide that changing – moving this child to a different country is a good idea for that . . . which . . . you know it's concerning 'cuz I don't – I don't know how you prove that it's in the child's best interest. I really don't know. I mean you gotta look at all the factors, I'm gonna do that but it's it's not like you can go see him every other weekend or whatever.

The evidentiary hearing was conducted over a two-day period, with witnesses testifying for both sides about such matters as the political and economic environment in Pakistan, the school and living conditions that would be made available to the child in both countries, the past and current history between the parties, and the procedure for, as well as the likelihood of, enforcing a United States custody order in Pakistan.

On March 30, 2018, the trial court issued a written order. The trial court engaged in a lengthy recitation of the parties' history and the testimony adduced at the hearing and then, as to the Convention issue, concluded:

> For the purposes of Article 38, both parties agree that the United States is a contracting state, that Pakistan properly acceded to the Hague Convention, and that the United States did not take any of the required steps to declare its

---

[2] Plaintiff also filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10), primarily asserting that Pakistan's circumstances had not changed with regard to the Convention and the United States. But a motion for summary disposition is a vehicle to attack (or at times enforce) the validity of a claim or defense, it is not a means by which to seek dismissal of a previously filed motion. See MCR 2.116(C)(8) (allowing a party to challenge the validity of a "claim," which is a cause of action set forth in a complaint, MCR 2.111(B)), and MCR 2.116(C)(10) (allowing a party to seek a judgment, except as to damages, when the material facts are undisputed).

acceptance of Pakistan's accession. Thus, the United States has not accepted Pakistan's accession. Citizens of neither country have legal recourse, under the Hague Convention, if a parent from one country abducts a child into the other country.

The trial court then provided a thorough analysis of the factors set forth in MCL 722.31(4), finding that three factors favored plaintiff, two factors were neutral between the parties, and defendant failed to establish by a preponderance of the evidence that a change in domicile was in the child's best interest. Having determined that a change in the minor child's domicile was not in the child's best interest, the trial court did not proceed to an analysis of whether a change would occur in the established custodial environment.

## II. ANALYSIS

### A. HAGUE CONVENTION AND MCL 722.27a(10)

Defendant contends that, because Pakistan has acceded to the Convention, it is now a "party" to that Convention as required by MCL 722.27a(10) and, therefore, the proscriptions imposed by MCL 722.27a(10) no longer remain an impediment to her request for change of domicile. As noted, the trial court recognized that the United States is a Contracting Party to the Convention, and that Pakistan acceded to the Convention, but never determined whether, as a result, Pakistan could be considered a "party" to the Convention for purposes of the statute.

"Issues of statutory interpretation are questions of law that this Court reviews de novo." *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012). "Treaties have the same legal effect as statutes, and therefore a . . . court's interpretation of a treaty is reviewed de novo as well." *VLM Food Trading Int'l, Inc v Illinois Trading Co*, 811 F3d 247, 251 (CA 7, 2016).[3]

The rules of statutory interpretation are recognized to encompass the following:

In examining a statute, it is our obligation to discern the legislative intent that may reasonably be inferred from the words expressed in the statute. One fundamental principle of statutory construction is that "a clear and unambiguous statute leaves no room for judicial construction or interpretation." Thus, when the Legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself and there is no need for judicial construction; the proper role of a court is to apply the terms of the statute to the circumstances in a particular case. Concomitantly, it is our task to give the words used by the Legislature their

---

[3] While federal case law constitutes "only . . . persuasive authority [and] not binding precedent," *Sharp v City of Lansing*, 464 Mich 792, 803; 629 NW2d 873 (2001), we look to it for guidance here because the vast majority of decisions applying the Convention are from the federal judiciary.

common, ordinary meaning. [*In re Investigative Subpoena*, 256 Mich App 39, 45-46; 662 NW2d 69 (2003) (quotation marks and citations omitted).]

More specifically the Supreme Court has held:

Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. We may consult dictionary definitions to give words their common and ordinary meaning. When given their common and ordinary meaning, "[t]he words of a statute provide 'the most reliable evidence of its intent . . . .' " [*Krohn v Home-Owners Ins Co*, 490 Mich 145, 156-157; 802 NW2d 281 (2011) (citations omitted; alterations in original).]

As set forth in footnote 1, MCL 722.27a(10) states:

Except as provided in this subsection, a parenting time order shall contain a prohibition on exercising parenting time in a country that is not a party to the Hague Convention on the Civil Aspects of International Child Abduction. This subsection does not apply if both parents provide the court with written consent to allow a parent to exercise parenting time in a country that is not a party to the Hague Convention on the Civil Aspects of International Child Abduction.

With regard to MCL 722.27a(10), we recently stated that "[t]he plain language of the statute establishes that a court may not grant physical custody to a parent when that parent lives in a country that is not a party to the Hague Convention." *Elahham v Al-Jabban*, 319 Mich App 112, 127; 899 NW2d 768 (2017).

Defendant argues that because Pakistan acceded to the Convention, it is a party for purposes of MCL 722.27a(10). We do not think it is as simple as that. Instead, when examining the meaning of "party" under the statute, as well as how a nation becomes obligated to another nation for purposes of the Convention, it is clear that Pakistan is not a party to the Convention.

The Legislature did not provide a definition for the term "party" under MCL 722.27a(10). Additionally, the Convention does not refer to a nation joining it as a "party." So, to determine the term's meaning, we turn to a legal dictionary because the term "party" has a peculiar legal meaning. See *Feyz v Mercy Mem Hosp*, 475 Mich 663, 683; 719 NW2d 1 (2006). Additionally, "[t]he common understanding and the traditional legal usage of a term also guide our interpretation." *In re Erwin*, 503 Mich 1, 10; 921 NW2d 308 (2018), citing *People v Thompson*, 477 Mich 146, 151-152; 730 NW2d 708 (2007); see also MCL 8.3a.[4]

---

[4] MCL 8.3a states:

All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law,

A "party" is "[o]ne who takes part in a transaction." *Black's Law Dictionary* (7th ed). A "transaction," in turn, is generally defined as "[a]ny activity involving two or more persons," and more specifically defined as "[t]he act or an instance of conducting business or other dealings" and as "[s]omething performed or carried out; a business agreement or exchange." *Id*. Using these definitions, "party" means one who engages with another to perform or carry out an agreement. This general definition is consistent with the traditional usage of the term party in the context of contractual relations[5]—that being a competent person whom, for valid consideration, mutually agrees to the performance or exchange of things. See *Lentz v Lentz*, 271 Mich App 465, 471; 721 NW2d 861 (2006), and *Detroit Trust Co v Struggles*, 289 Mich 595, 599; 286 NW 844 (1939).

In determining whether Pakistan is a party to the Convention with the United States,[6] we must look to how a nation becomes bound to the Convention rules and procedures. After all, as one court has recognized, "[a] State only becomes bound by—that is, becomes a party to—a treaty when it" takes the appropriate legal action to be bound. *Flores v Southern Peru Copper Corp*, 414 F3d 233, 256 (CA 2, 2003). In doing so, we conclude that Pakistan's accession to the Convention—without the United States' acceptance—does not make Pakistan a party to the Convention for purposes of state law.

There are two ways in which a nation can become a party to the Convention. First, under Article 37, nations that were "Members of the Hague Conference of Private International Law at

---

shall be construed and understood according to such peculiar and appropriate meaning.

[5] We place our focus on what is meant by a contracting "party" because "[a]s a general matter, a treaty is a contract, though between nations." *BG Group PLC v Republic of Argentina*, 572 US 25, 37; 134 S Ct 1198; 188 L Ed 2d 220 (2014). See, also, *In re Extradition of Zhenly Ye Gon*, 613 F Supp 2d 92, 96 (D DC, 2009) (reasoning that "a treaty is a contract between countries").

[6] Our concurring colleague opines that we have departed from the plain language of the statute by considering whether Pakistan is a party to the Convention *with the United States*, as opposed to whether Pakistan is simply a party to the Convention in general, and that Pakistan is "obviously" a "party" to the Convention because it acceded to it. But looking to dictionary definitions and considering the context of the term within the statute are precisely how courts determine the plain meaning of an undefined statutory term. See *Marcelle v Taubman*, 224 Mich App 215, 219; 568 NW2d 393 (1997), *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 526; 697 NW2d 895 (2005) ("Because the role of the judiciary is to interpret rather than write the law, courts lack authority to venture beyond a statute's unambiguous text. Further, we accord undefined statutory terms their plain and ordinary meanings and may consult dictionary definitions in such situations.") (citations omitted), and *People v Gillis*, 474 Mich 105, 114; 712 NW2d 419 (2006) (holding that courts must consider, in addition to the dictionary definition, the placement and purpose of those words in the context of the statutory scheme). And when doing so here, we conclude that Pakistan can only be a "party," as that term is used in MCL 722.27a(10), if it is a party to the Convention with the United States.

the time of its Fourteenth Session," could sign the Convention and then have the subsequent ratification of the signature deposited with the Ministry of Foreign Affairs in the Netherlands. Hague Convention, art 37. "The United States signed the Convention in 1981 and ratified it, thereby becoming a Contracting State, in 1988, and the Convention entered into force in the United States on July 1, 1988." *Marks on Behalf of SM v Hochhauser*, 876 F3d 416, 420 (CA 2, 2017).

Pakistan was not able to become a Contracting State through Article 37, but could through Article 38 of the Convention. Article 38 allows a nation to "accede" to the Convention. Hague Convention, art 38. " 'Accession' is 'the act whereby a State accepts the offer or the opportunity of becoming a party to a treaty already signed by some other States.' " *Marks*, 876 F3d at 419 n 2 (quotation marks and citation omitted). But as *Marks* points out, an accession to the Convention is only binding on those Contracting States that accept the accession:

> Article 38 explains that:
>
>> Any other State may accede to the Convention. . . . The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. . . . The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the first day of the third calendar month after the deposit of the declaration of acceptance.
>
> As Article 38 makes clear, accession requires the acceptance of other states before the Convention "will enter into force," *i.e.*, the accession has effect only as to Contracting States that "have declared their acceptance of the accession." [*Marks*, 876 F3d at 419-420 (citations omitted).]

There is no dispute that Pakistan acceded to the Convention by depositing its instrument of accession to the Convention on December 22, 2016, with the Convention entering into force for Pakistan on March 1, 2017.[7] See *Ozaltin v Ozaltin*, 708 F3d 355, 359 n 4 (CA 2, 2013) (citations omitted). However, the United States *has not* recognized Pakistan's accession to the Convention. And, as made clear above, "the Convention does not 'enter into force' until a ratifying state accepts an acceding state's accession and [ ] Article 35 limits the Convention's application to removals and retentions taking place after the Convention has entered into force between the two states involved." *Marks*, 876 F3d at 424. As a result, the clear and important legal effect of the United States not accepting Pakistan's accession to the Convention is that Pakistan is not bound to all the benefits and obligations imposed by the Convention when it comes to parenting-time orders arising out of the United States:

---

[7] International Family Law Firm, *Country Report: Pakistan* <http://www.internationalfamilylawfirm.com/2017/06/country-report-pakistan.html> (accessed October 9, 2018). The referenced article was authored by Jeremy D. Morley, who served as a witness in this case.

It is undisputed that the United States and the Dominican Republic have not entered into the negotiations required by Article 38. Consequently, the Convention's administrative and judicial mechanisms are not yet applicable with regard to relations between the two countries. *See Gonzalez v Gutierrez,* 311 F.3d 942, 945 (9th Cir., 2002) ("Accession . . . binds a country only with respect to other nations that accept its particular accession under Article 38.") (citing Lynda R. Herring, *Taking Away the Pawns: International Parental Abduction & the Hague Convention,* 20 N.C.J. INT'L. L & COMM. REG. 137, 138 n. 8 (1994)); *see also* Dep't of State, Hague Int'l Child Abduction Convention Text and Legal Analysis, 51 Fed. Reg. 10494, 10514 (Mar. 26, 1986) ("[U]nder Article 38 the Convention is open to accession by non-member States, but enters into force only between those States and member Contracting States which specifically accept their accession to the Convention."). [*Taveras v Taveras,* 397 F Supp 2d 908, 911 (SD Ohio, 2005), aff'd 477 F3d 767 (CA 6, 2007)].

See, also, *Marks,* 876 F3d at 423 ("Clearly, the Convention did not come into force between Thailand and the United States until after the latter accepted the former's accession."); *Souratgar v Lee,* 720 F3d 96, 102 n 5 (CA 2, 2013) ("Under Article 38, one state's accession will have effect with respect to another contracting state only after such other state has declared its acceptance of the accession."); *Viteri v Pflucker,* 550 F Supp 2d 829, 833 (ND Ill, 2008) ("Thus, the Convention enters into force between an acceding State and a member Contracting State only when the Contracting State accepts the acceding State's accession to the Convention."). As such, the Convention has not come into force, i.e., it is not binding between Pakistan and the United States because the latter has not accepted the former's accession.

To accept defendant's argument would render hollow the word "party." As we hope to have made clear, a nation (or any other person or entity) that has not bound itself to comply with a contract's provisions is not a "party" to the contract. To conclude otherwise would render the term meaningless, and would allow a circuit court to enter a parenting time order without offending MCL 722.27a(10), despite there being no legal protections that the foreign nation would be bound to the Convention's terms.

The protective procedures and rules of the Convention are not binding between the United States and Pakistan, and as a result, Pakistan is not a "party" to the Convention as contemplated by MCL 722.27a(10). Therefore, the prohibitions of that statute remain applicable. For that reason, the trial court properly denied the motion to change domicile, and it is unnecessary to proceed with a review of defendant's remaining substantive allegations of error regarding the trial court's ruling on the motion for change of domicile.

## B. ATTORNEY FEES

Defendant asserts that the trial court erred in denying her request that plaintiff contribute to or pay her attorney fees, citing the income discrepancy between the parties.

This Court reviews a trial court's award of attorney fees in a divorce action for an abuse of discretion. *Cassidy v Cassidy,* 318 Mich App 463, 479; 899 NW2d 65 (2017). "An abuse of discretion occurs when the result falls outside the range of principled outcomes." *Id.* Findings

of fact are reviewed for clear error. *Id.* "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Id.* (quotation marks and citation omitted).

A party requesting attorney fees postjudgment must show that the fees were incurred, and that they were reasonable. *Souden v Souden*, 303 Mich App 406, 415; 844 NW2d 151 (2013). "When requested attorney fees are contested, it is incumbent on the trial court to conduct a hearing to determine what services were actually rendered, and the reasonableness of those services." *Id.* (quotation marks and citation omitted). In accordance with MCR 3.206(C), as amended April 1, 2003, 468 Mich lxxxv (2003):

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.
>
> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that
>
> (a) the party is unable to bear the expense of the action, and that the other party is able to pay, or
>
> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply.

Further:

> "Attorney fees are not awarded as a matter of right but only when necessary to enable a party to carry on or defend the litigation." "The party requesting the attorney fees has the burden of showing facts sufficient to justify the award." This burden includes the burden to provide evidence of the attorney fees that were incurred. A party cannot rely on unsubstantiated assertions when requesting attorney fees under MCR 3.206(C). [*Sulaica v Rometty*, 308 Mich App 568, 590; 866 NW2d 838 (2014) (citations omitted).]

Defendant asserts that she is entitled to attorney fees premised on the income discrepancy between the parties. In support of her position, defendant relies on this Court's ruling in *Stallworth v Stallworth*, 275 Mich App 282, 288-289; 738 NW2d 264 (2007), wherein it was stated:

> Necessary and reasonable attorney fees may be awarded to enable a party to carry on or defend a divorce action. . . . Because [the] plaintiff's yearly income is less than the amount she owed her attorney, she sufficiently demonstrated her inability to pay her attorney fees. Furthermore, [the] defendant earns more than double what [the] plaintiff earns in a year, which demonstrated his ability to contribute to [the] plaintiff's attorney fees. Under these circumstances, the trial court's ruling was within the range of reasonable and principled outcomes. [Citations omitted.]

-9-

Defendant made the same argument after the entry of the divorce judgment and the denial of her request for plaintiff to contribute to her attorney fees. On appeal of that ruling to this Court, we addressed the request for attorney fees on the basis of income disparity alone:

> Since *Stallworth* was decided in 2007, it has occasionally been cited for the proposition that a party has always demonstrated an inability to pay attorney fees if his or her annual income is less than the amount owed. But more recently, this Court has clarified that its explanation in *Stallworth* should not be construed as a bright-line rule that must be strictly enforced. Instead, *Stallworth* is properly read as a mere example of one instance in which the party seeking attorney fees satisfied the burden of demonstrating an inability to pay. In any event, whether a party has established entitlement to an award of attorney fees is always "dependent on the particular facts and circumstances of each case," giving "special consideration to the specific financial situations of the parties and the equities involved." For the same reason, we will not construe *Stallworth* as suggesting that when one party "earns more than double what [the adverse party] earns in a year," that party necessarily has the ability to pay the adverse party's attorney fees. In other words, while the rationale set forth in *Stallworth* can be viewed as persuasive in the context of similar facts, it is not dispositive of the issue presented in the present matter. [*Safdar v Aziz*, unpublished per curiam opinion of the Court of Appeals, issued March 13, 2018 (Docket No. 336590), pp 2-3 (citations omitted; alteration in original).]

The trial court's denial of defendant's request for attorney fees was based upon (1) "the parties' respective inabilities to pay," (2) plaintiff's significant debts and monthly expenses, including his own attorney fees which he paid by credit card, (3) defendant's failure to demonstrate plaintiff's ability to pay, and (4) defendant's lack of effort to obtain employment despite her level of education and "an impressive professional background." *Id*. at 3.

Postjudgment, the trial court again denied defendant's request that plaintiff contribute to, or pay, the attorney fees she had incurred. The trial court noted that both parties have incurred significant debt due to the proceedings. The trial court indicated that a significant factor for denial of the request was defendant's failure to secure any type of employment since the judgment of divorce in 2016. The trial court specifically acknowledged that its decision was premised on MCR 3.206(C)(2)(a), as amended April 1, 2003, 468 Mich lxxxv (2003), which requires proof that "the party is unable to bear the expense of the action and that the other party is able to pay," rather than, MCR 3.206(C)(2)(b), which involves a refusal to comply with previous orders.

At the evidentiary hearing, both parties asserted that the legal proceedings had been extremely expensive and that they had both incurred substantial legal fees, which remain unpaid. Defendant asserted that she has been required to borrow money to pay her attorney fees and that, although she has sought employment, she has not been able to procure such in the United States despite her education level and professional experience. While plaintiff acknowledged that he has a substantial income from his employment with World Bank, he attested to paying his attorney with a credit card and retaining an outstanding balance to his attorney of more than $100,000.

On this record, and given that the burden of proof is on defendant, it cannot be said that the trial court erred in denying her request for attorney fees. In accordance with MCR 3.206(C)(2)(a), it was incumbent on defendant to demonstrate that she was unable to bear the expense of the litigation and that plaintiff had the ability to pay. As noted by the trial court and by this Court in the prior appeal, despite defendant's educational and professional background and her assertion of the expenditure of effort to obtain employment, it is difficult to accept that defendant is unable to earn any monies or obtain a job. At the very least, the trial court could reasonably impute income to defendant, which could dispute or minimize her declared need for contribution to her attorney fees. Further, although defendant asserted that she was required to borrow funds to pursue the litigation, there was no testimony that defendant also incurred a commensurate obligation to repay those borrowed funds. There exists, in other words, an informational or evidentiary gap regarding defendant's assertions of need and her continued ability to survive economically without employment.

Commensurately, defendant has not demonstrated that plaintiff has the ability to pay or contribute to her attorney fees. Again, the evidentiary record, with regard to testimony elicited at the hearing, lacked anything other than confirmation of plaintiff's salary and the incurrence of substantial attorney fees of $100,000 or more, with payment of the debt at least in part through credit cards. Additionally, during the evidentiary hearing, defendant offered plaintiff a place to stay, transportation, and the opportunity to see the minor child when she travels back to the United States, which she implied would be a regular occurrence, making her assertions of poverty or financial need somewhat suspect. As such, the trial court did not abuse its discretion in denying defendant's request for attorney fees.

Affirmed.

/s/ Christopher M. Murray
/s/ Michael J. Riordan

-11-